THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Orlando Division

Case No. 6:04-cv-1892-Orl-18JGG

BREVARD EMERGENCY
SERVICES, P.A., a Florida corporation

    Plaintiff,

vs.

EMCARE, INC., a Delaware corporation
and HEALTHCARE ADMINISTRATIVE
SERVICES, INC., a Delaware corporation,

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, BREVARD EMERGENCY SERVICES, P.A., a Florida professional service corporation (hereinafter "BES"), sues Defendants, EMCARE, INC., a Delaware corporation (hereinafter "EmCare") and HEALTHCARE ADMINISTRATIVE SERVICES, INC. (hereinafter "Healthcare") (collectively "Defendants"), a Delaware corporation, and alleges as follows:

### PARTIES

1.    Plaintiff, BES, is a professional service corporation organized and existing under the laws of the State of Florida, with its principal place of business located at 1600 Sarno Road, Suite 204, Melbourne, Florida 32935.

2.    Defendant, EmCare, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1717 Main Street, Suite 5200, Dallas, Texas 75201.

3.    Defendant, Healthcare is a corporation organized and existing under the laws of

the State of Delaware, with its principal place of business located at 1717 Main Street, Suite 5200, Dallas, Texas 75201.

## JURISDICTION

4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 since there is complete diversity among the parties, and the amount in dispute exceeds $75,000, exclusive of interest and costs.

5. The Court has personal jurisdiction over Defendants pursuant to Fla. Stat. §48.193(1)(a) since, at all times material to this Complaint, they operated, conducted, engaged in, or carried on a business or business venture in this state and/or had offices or agents in this state. Defendants' business ventures in this state include providing physician groups with insurance and administrative services. Defendants are registered to do business in the State of Florida.

6. The assertion of personal jurisdiction over Defendants is also appropriate pursuant to Fla. Stat. §48.193(1)(g) due to Defendants breach of contract(s) in Florida by their failure to perform acts required by the contract(s) to be performed in Florida. The contract(s) at issue were presented and negotiated by Defendants' employees and/or agents in the State of Florida.

7. The Court also has personal jurisdiction over Defendants pursuant to Fla. Stat. §48.193(2) since they are engaged in substantial and not isolated activity within the State of Florida.

## VENUE

8. Venue is proper in this judicial district under 28 U.S.C. § 1391(a), as it is the district in which the conduct complained of arose.

## FACTUAL BACKGROUND

9. BES is a physician group comprised of emergency medicine physicians.

10. EmCare and Healthcare are related companies that share the same corporate address and upon information and belief many of the same officers and directors.

11. At all times material hereto, EmCare was the agent and/or servant of Healthcare, and was, at all material times mentioned, performing such acts for Healthcare, and was authorized to carry on and further the business interests of Healthcare.

12. In November 2002, BES representatives began negotiations with EmCare in Florida regarding EmCare's providing comprehensive insurance, administrative and management services to BES.

13. EmCare holds itself out as "the nation's leading provider of emergency care", with expertise in providing emergency healthcare, administrative, insurance and outsourcing services for hospitals and physician groups.

14. Throughout the negotiations, EmCare discussed the procurement of medical malpractice insurance for BES' physicians. The procurement of such insurance was of the utmost importance to BES given the adverse insurance market that existed in Florida at that time, in light of the escalating insurance premiums in Florida, and the declining number of professional liability carriers doing business in Florida.

15. As a result of these negotiations, on or about February 3, 2003, BES entered into a Practice Services Agreement with Healthcare with an effective date of April 1, 2003 (the "Agreement"). A true and correct copy of Agreement is attached hereto as Exhibit "A".

16. At all times during the course of the negotiations leading up to the execution of the Agreement, EmCare acting on behalf of Healthcare, assured and represented to BES that malpractice insurance would be procured on behalf of BES on an **occurrence coverage** basis.

17. Prior to entering into the Agreement, BES was able to secure occurrence type coverage from a professional liability insurer during the months of January 2003 to March 2003. This policy provided policy limits of $1 million/$3 million per incident and per physician.

18. The amount charged BES by Healthcare for professional liability insurance was comparable to the market rates paid by BES in January 2003 to March 2003 for **occurrence** type coverage. A less expensive, less comprehensive, type of coverage known in the industry as **claims made coverage** could have been procured by BES at 30% of the price BES was charged by Healthcare under the Agreement.

19. Pursuant to Section I.B. of the Agreement, Healthcare agreed to obtain for BES and its physicians occurrence type of professional liability insurance coverage with limits of $1 million per occurrence and a $3 million annual aggregate.

20. In April of 2003, BES received a Certificate of Liability Insurance, a true and correct copy of which is attached hereto as Exhibit "B". Contrary to EmCare's representations and the Agreement itself, the Certificate reflected that the insurance procured by Healthcare was for **claims made** coverage with liability limits of $1 million per incident and a $3 million annual aggregate.

21. The Certificate of Liability Insurance also reflected insurance being provided by Columbia Casualty Company, a surplus lines carrier in the CNA group of insurance companies. Although the Certificate of Liability Insurance identified the fact that insurance was being provided by Columbia Casualty Company, the Certificate failed to disclose that this entity was a surplus lines carrier, as required by Section 626.924, Florida Statutes.

22. Upon receipt of the Certificate of Insurance, BES immediately notified EmCare of its failure to comply with the terms of the Agreement and their representations by procuring claims made coverage rather than the broader occurrence type coverage.

4

23. In response to BES' insurance inquiries, EmCare sent a letter to BES dated April 7, 2003, a true and correct copy of which is attached hereto as Exhibit "C", stating that professional liability coverage had been procured on a **claims made** basis with liability limits of $1 million per incident and a $3 million annual aggregate.

24. BES demanded from EmCare a copy of the applicable policy of insurance, which EmCare refused to provide. Neither EmCare nor HealthCare provided BES with a copy of the policies of insurance purportedly procured on behalf of BES during the term of the Agreement.

25. BES ultimately received copies of the applicable policies directly from CNA Insurance Company. A true and correct copy of the insurance policies ("Policies") believed to have been procured by Defendants on behalf of BES are attached hereto as composite Exhibit "D" of the Complaint.

26. The Policies confirm that Defendants failed to procure appropriate professional liability insurance for BES, as required by Section I.B. of the Agreement, since the Policies were for claims made coverage, rather than occurrence type coverage.

27. Moreover, the Policies reveal an insurance scheme in which EmCare itself is the named insured, with the ability to include as many additional insured entities as it wishes. However, the Policies only contain fixed aggregate limits of $10 million, shared among multiple additional insureds, many of whom have individual limits of $5 million or more by endorsement. Furthermore, coverage under these policies is also subject to linked cross-policy aggregate limits of $30 million in 2003 and $20 million in 2004 shared between BES and several unrelated and undisclosed corporate entities in at least six other states. At no time during the negotiations leading up to execution of the Agreement, in the Agreement itself, nor during the term of the Agreement was BES informed of, nor did BES ever agree to a shared-aggregate policy.

28. Upon information and belief, the Policies were funded by EmCare with Columbia Casualty Company simply serving as a fronting company, allowing EmCare, which is not a licensed insurer, nor an approved reinsurer, to sell its own insurance in Florida and around the Country. At no time during the negotiations leading up to execution of the Agreement, in the Agreement itself, nor during the term of the Agreement was BES informed of this fronting arrangement.

29. At no time during the negotiations leading up to execution of the Agreement, in the Agreement itself, nor during the term of the Agreement, did BES ever agree to a claims made policy.

30. Due to its failure to procure occurrence type coverage on behalf of BES, EmCare agreed and represented to BES that it would provide, at no charge to BES, a "tail" policy to cover the gap in insurance coverage caused by Defendants' improper procurement of claims made insurance.

31. EmCare breached this agreement by refusing to provide tail coverage as agreed.

32. As a result, BES was forced to procure professional liability insurance that included expensive prior acts coverage for the period during which it maintained its contract with Healthcare. Professional liability coverage for claims arising after the termination of the Agreement, with equivalent liability limits, is valued at nearly $1.8 million.

33. As a result of Defendants' failure to provide occurrence type insurance as agreed, BES was forced to reduce the liability limits for prior acts coverage out of economic necessity to $500,000 per incident and a $1 million aggregate, which has resulted in additional potential exposure to BES for such claims.

34. All conditions precedent to the institution of this action have been waived, satisfied or excused.

## COUNT I
### (Breach of Contract Against Healthcare)

35.     BES repeats and realleges paragraphs one (1) through thirty-four (34).

36.     BES and Healthcare entered into a Agreement under which Healthcare agreed to procure professional liability insurance coverage for BES, as well as to provide administrative and management services.

37.     BES fully performed all of its obligations under the Agreement.

38.     Healthcare materially breached the Agreement by its failure to provide occurrence type coverage on behalf of BES.

39.     As a direct and proximate result of Healthcare's breach of the Agreement, BES has incurred damages including, but not limited to, being required to purchase prior acts coverage for the time period the Agreement was in effect with lower liability limits exposing it to potential further loss.

WHEREFORE, Plaintiff, Brevard Emergency Services, P.A., requests that the Court award all damages available at law, including, without limitation, compensatory, consequential, and incidental damages, including interest thereon, in favor of BES and against Healthcare, costs of this action and award BES such other relief as the Court deems just and proper.

## COUNT II
### (Breach of Oral Agreement to Provide Occurrence Coverage Against EmCare)

40.     BES repeats and realleges paragraphs one (1) through thirty-four (34).

41.     EmCare orally agreed, represented and promised to procure occurrence type professional liability insurance coverage on behalf of BES (the "Oral Agreement").

42.     In reliance upon the Oral Agreement, BES entered into the Agreement with Healthcare, the entity Emcare acted on behalf of.

42. EmCare materially breached the Oral Agreement by its failure to provide occurrence type coverage on behalf of BES.

44. As a direct and proximate result of EmCare's breach of the Oral Agreement, BES has incurred damages including, but not limited to, being required to purchase prior acts coverage for the time period the Agreement was in effect with lower liability limits exposing them to potential further loss.

WHEREFORE, Plaintiff, Brevard Emergency Services, P.A., requests that the Court award all damages available at law, including, without limitation, compensatory, consequential, and incidental damages, including interest thereon, in favor of BES and against EmCare, costs of this action and award BES such other relief as the Court deems just and proper.

## COUNT III
### (Breach of Agreement to Provide Tail Coverage Against EmCare)

45. BES repeats and realleges paragraphs one (1) through thirty-four (34).

46. EmCare agreed and represented to BES that it would provide, at no charge to BES, a "tail" policy to cover the gap in insurance coverage caused by EmCare's improper procurement of claims made insurance.

47. EmCare breached its agreement with BES by failing to provide EmCare with tail coverage, at no charge to BES.

48. As a direct and proximate result of EmCare's failure to provide tail coverage as agreed, BES has incurred damages including, but not limited to, being required to purchase prior acts coverage for the time period the Agreement was in effect with lower liability limits exposing it to potential further loss.

WHEREFORE, Plaintiff, Brevard Emergency Services, P.A., requests that the Court award all damages available at law, including, without limitation, compensatory, consequential,

and incidental damages, including interest thereon, in favor of BES and against EmCare, costs of this action and award BES such other relief as the Court deems just and proper.

## COUNT IV
### (Breach of Fiduciary Duty Against EmCare and Healthcare)

49. BES repeats and realleges paragraphs one (1) through thirty-four (34).

50. At all material times hereto, Defendants served as BES' broker for the purpose of procuring insurance on behalf of BES.

51. As BES' broker, Defendants owed a duty to BES to provide insurance coverage as agreed and to inform BES of all material facts within their knowledge regarding their procurement of insurance on behalf of BES.

52. Defendants breached their fiduciary duty to BES by failing to provide BES with an occurrence type policy as agreed and failing to inform BES of all material facts within their knowledge with regard to their procuring insurance on behalf of BES.

53. As a direct and proximate result of Defendants' breach of their fiduciary duty to BES, BES incurred damages including, but not limited to, being required to purchase prior acts coverage for the time period the Agreement was in effect with lower liability limits exposing it to potential further loss.

WHEREFORE, Plaintiff, Brevard Emergency Services, P.A., requests that the Court award all damages available at law, including, without limitation, compensatory, consequential, and incidental damages, including interest thereon, in favor of BES and against Defendants, costs of this action and award BES such other relief as the Court deems just and proper.

## COUNT V
### (Florida Deceptive and Unfair Trade Practices Act against EmCare and Healthcare)

54. BES repeats and realleges paragraphs one (1) through thirty-four (34).

55. This claim for relief is asserted against Defendants and arises under Chapter 501, Florida Statutes, the Florida Deceptive and Unfair Trade Practices Act (the "Act").

56. At all times material hereto the BES was and is a "consumer" as that term is defined by Section 501.203(7) of the Act.

57. At all times material hereto Defendants, by virtue of their above described conduct, were engaged in "trade or commerce," as that term is defined by Section 501.203 (8) of the Act. Accordingly, Defendants at all times material hereto were and are subject to the terms and conditions of the Act.

58. Defendants have engaged in "unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning of Section 501.204(1), Florida Statutes by promising and agreeing to BES that occurrence type professional liability coverage would be procured on behalf of BES and by failing to disclose that the insurance would be provided by a surplus lines insurance carrier under shared-aggregate policies. At the time Defendants made these representations and/or omissions of material fact to BES, they knew that they would procure professional liability insurance on behalf of BES on a claims made basis through a surplus lines carrier under shared-aggregate policies.

59. As a direct and proximate result of Defendants' unfair and deceptive trade practices, BES has been injured in its business and property. Moreover, BES has been forced to retain counsel and is obligated to pay reasonable attorneys' fees to counsel.

WHEREFORE, BES demands judgment against Defendants for damages incurred, plus pre-judgment interest thereon, attorney's fees pursuant to Fla. Stat. § 501.2105, costs of this action and such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff, Brevard Emergency Services, P.A., hereby demands a trial by jury on all issues triable before a jury.

Dated: December 29, 2004

DUANE MORRIS LLP
Attorneys for Plaintiff,
  Brevard Emergency Services, P.A
200 South Biscayne Boulevard, Suite 3400
Miami, Florida 33131
Telephone: 305.960.2200
Facsimile: 305.960.2201

By: _____
Harvey W. Gurland, Jr., P.A.
Florida Bar No. 284033
Trial Counsel for Plaintiff, Brevard Emergency Services, P.A
Eric Saida
Florida Bar No. 0178187

MIA\141484.1