UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BREVARD EMERGENCY SERVICES,
P.A.,

                Plaintiff,

-vs-                                     Case No.  6:04-cv-1892-Orl-28JGG

EMCARE, INC., and HEALTHCARE
ADMINISTRATIVE SERVICES, INC.,

                Defendants.
_____

## ORDER

This cause is before the Court on Defendants' Motion to Dismiss Counts I-V of Plaintiff's Complaint (Doc. 18, filed February 25, 2005), in opposition to which Plaintiff has filed a Response (Doc. 26). On April 18, 2005, the Court heard oral argument on the motion. Upon consideration of the parties' arguments and submissions, the motion is denied.

### I. Background[1]

Plaintiff Brevard Emergency Services, P.A. ("BES") is a group of emergency medicine physicians. On February 3, 2003, BES entered into a Practice Services Agreement (Ex. A to Doc. 1) ("the Agreement") with Defendant Healthcare Administrative Services, Inc. ("Healthcare"). The Agreement describes Healthcare as being "in the business of providing

---

[1] For the purposes of ruling on the motion to dismiss, the factual allegations of the Complaint must be accepted as true, and the facts in this Background section are taken from the Complaint and the attachments thereto.

comprehensive administrative and management services to physicians, professional corporations, and other professional health care entities and individuals and employs or retains contracts with personnel trained to provide such comprehensive management support services." (Ex. A to Doc. 1, at 1). EmCare is alleged in the Complaint to be a company related to Healthcare and "the agent and/or servant of Healthcare." (Doc. 1 ¶¶ 10-11). EmCare allegedly negotiated with BES regarding the provision of services (Doc. 1 at 3), but the signatories on the Agreement are BES and Healthcare only. (Ex. A to Doc. 1, at 14).

The Agreement explains that BES "desires administrative and management services for its operations, and desires for [Healthcare] to provide such services to [BES] in connection with [BES]'s contract . . . for the provision of emergency medical services and hospitalist services . . . at Holmes Regional Medical Center and Palm Bay Community Hospital." (Ex. A To Doc. 1, at 1). The Agreement lists nine services to be provided to BES by Healthcare, including "Insurance." (Ex. A to Doc. 1, at 1-3). As to "Insurance," the Agreement provides:

> **Insurance**. In consideration for the compensation set forth herein, [Healthcare] shall obtain for [BES] and Group Providers professional liability insurance coverage, including coverage for any vicarious liability of Physicians arising from the utilization of MLPs, with limits of $1,000,000 per occurrence and $3,000,000 in the aggregate annually. Such insurance shall cover Medical Services provided at the Health Center pursuant to the Health Center Contract, subject to the below, as well as other terms, conditions and exclusions contained in the insurance policy:
> 1.    The insurance carrier providing coverage under Administrative Company's insurance program shall be rated "A-" or better by Best's at all times

                    during the term of this Agreement[.]
2.   The program shall include coverage for the Emergency Department Medical Director's administrative duties in the above-stated limits.
3.   The program shall also include coverage for defense costs of government investigations of any covered Group Providers with limits of $25,000 per occurrence and $75,000 aggregate for each Group Provider.
4.   In order to remain eligible for such insurance coverage, Physician Group and each Group Provider shall at all times abide by the terms of this Agreement and shall fulfill the obligations set forth in Section II.C herein.
5.   If, in the sole discretion of [Healthcare], [BES] or an individual Group Provider fails to abide by the provisions of Section II.C herein, [Healthcare] may terminate this Agreement and/or the insurance coverage provided hereunder. [BES] may cure such breach by an Individual Group Provider under this Section by immediately terminating all employment or other [BES]-based professional and business relationships with such individual Group Provider and preventing such Group Provider from providing services hereunder.

(Ex. A to Doc. 1 ¶ 1.B.).

In a letter dated April 7, 2003, EmCare advised BES that a claims-made professional liability policy had been obtained for BES from CNA Insurance Company. (Letter from Donald G. Booth to Michael Shapiro, M.D. of 4/7/2003, Ex. C to Doc. 1). In that letter, EmCare explained that the policy provided coverage "for malpractice claims made against [BES] during the period beginning January 1, 2001 and ending January 1, 2004" and that "[a]s of January 1, 2004, and any subsequent year, 'tail' coverage will be purchased on the current CNA insurance policy covering the claims occurring during the above-referenced coverage period, or a new policy will be procured with CNA's retroactive date of January 1,

2001." Id.

In addition to the Agreement and the EmCare letter, there are two other attachments to the Complaint. A Certificate of Liability Insurance (Ex. B to Doc. 1) lists BES as the insured on claims-made policy number HAZ104002538-1. That policy (Ex. D to Doc. 1), lists EmCare as the named insured and refers to liability limits "shared by corporate entities."

## II. Discussion

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) of all five counts of the Complaint for failure to state a claim. Such a motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Slagle v. ITT Hartford, 102 F.3d 494, 497 (11th Cir. 1996). In ruling on a motion to dismiss, the court may consider only pleadings and attached exhibits. Grossman v. NationsBank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000). All well-pled allegations of facts "are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274 n.1 (11th Cir. 1999).

It does not "appear beyond doubt" that BES can prove no set of facts in support of the counts in its Complaint. In Count I, BES alleges breach of contract against Healthcare, asserting that Healthcare breached the Agreement "by its failure to provide occurrence type coverage on behalf of BES." (Doc. 1 ¶ 38). Defendants argue that the Agreement does not specify what type of insurance policy – claims-made or occurrence – was to be procured and

that the claims-made policy procured satisfies Healthcare's obligations. However, reading the Agreement as a whole, it is clear that the parties intended to cover BES for acts in connection with the services of BES's physicians under their contract with two hospitals. Although the Agreement does not specify that a "claims-made" or "occurrence" policy would be procured, coverage for the physicians' services under their contract with the hospitals was to be obtained one way or another, presumably either through an occurrence policy or through a claims-made policy with "tail" coverage. Indeed, EmCare's April 7, 2003 letter (Ex. C to Doc. 1) regarding the obtained coverage explains that "tail" coverage would be obtained; curiously, the parties do not mention this statement in that letter in their arguments. In sum, at this juncture the precise extent of coverage obtained on BES's behalf is not clear to the Court, and although the Agreement does not expressly require an "occurrence" policy, the Complaint's allegation that it required "occurrence type" coverage is sufficient to survive the motion to dismiss.

In Count II, BES alleges breach of an oral agreement to provide occurrence coverage against EmCare. Defendants seek dismissal of this count on the basis that any oral representations made during the negotiation of the Agreement are merged into the Agreement. However, as noted by BES, EmCare is not a party to the Agreement, and EmCare also correctly notes that under Florida law there is an "inducement" exception to the parol evidence rule, the applicability of which cannot be determined at this stage of this case.

In Count III, BES alleges breach of an agreement to provide tail coverage against Emcare. In the motion to dismiss, Defendants refer to this count as "breach of subsequent

oral contract to provide tail coverage," and Defendants assert that BES has not stated "sufficient facts to establish subsequent modification of agreement." (Doc. 18 at 8). Defendants also argue that elements of a contract to provide insurance are not alleged and that the statute of frauds is fatal to this claim. BES responds by again noting that EmCare is not a party to the Agreement and that the statute of frauds would not necessarily bar this claim because the provision of tail coverage could have been completed within a year. Moreover, the Complaint does not refer to the tail coverage agreement as an oral agreement, and the April 7, 2003 letter from Emcare to BES states – in writing – that "'tail' coverage will be purchased." (Ex. C to Doc. 1). It is not clear why BES has not relied on this statement in the letter, but in any event the Court finds that Count III has been adequately pled.

In Count IV, BES alleges breach of fiduciary duty against both EmCare and Healthcare. Defendants seek dismissal of this count on the basis that they owed no fiduciary duty to BES. However, BES has sufficiently alleged that a fiduciary duty was owed and breached by both Defendants. Additionally, although Defendants assert that the economic loss rule bars this count, BES correctly notes that breach of fiduciary duty claims have been held actionable despite the economic loss rule.

Finally, in Count V BES alleges that both Defendants have violated Florida's Deceptive and Unfair Trade Practices Act. BES contends that Defendants failed to disclose that the insurance they would procure on BES's behalf would be a claims-made policy from a surplus lines insurance carrier with shared-aggregate limits. Defendants contend that this count should be dismissed because of the insurance exception to the Act. However, as BES

points out, Defendants "deny they were selling insurance," and at this stage of the case it cannot be determined whether the insurance exception bars BES's FDUTPA claim.

### III.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that Defendants' Motion to Dismiss Counts I-V of Plaintiff's Complaint (Doc. 18, filed February 25, 2005) is **DENIED** in all respects.

**DONE** and **ORDERED** in Orlando, Florida this __20__ day of April, 2005.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party